## Atkins's Appeal.

1. The court has not power, even by agreement of the parties interested, to make a distribution of the proceeds of a sheriff's sale unless the money has been actually paid into court, except where the sheriff has made a special return with a certified list of liens, that a lien-creditor was the purchaser and had receipted to him under the Act of April 20th 1846.

2. Land was sold under a levari, the plaintiff receipted to the sheriff for the amount of his debt; the next lien-creditor receipted for the remainder of the proceeds; several fi. fas. were issued against the same defendants and their personal property sold; without a return of the writs or payment of the money into court, by agreement of the plaintiffs in the fi. fas., one of them being the second lien-creditor, the proceeds of *all* the sales were considered in court, and distribution decreed. *Held*, that the court had no power to enforce the decree, the proceedings were irregular and they were quashed on appeal.

January 24th 1868.   Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.   STRONG, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Schuylkill county :* in the matter of the distribution of the proceeds of the sheriff's sale of the property of John Burnish & Co.

From the report of the auditor and the testimony reported by him, the following facts appeared:—

John Burnish, James Talbot and Thomas W. Yardley were partners, under the firm of John Burnish & Co., in the business of rolling iron in Schuylkill county.   On the 30th of November 1854 a mortgage on their real estate to secure the payment of $15,000 had been executed by John Burnish and others, who were the owners of the real estate, to Edward Yardley and Thomas W. Yardley, which was afterwards assigned to Joseph Paxton; this mortgage was the first lien.   Another mortgage on the same real estate was executed on the 15th of October 1857, by the individual members of the firm, to Joseph Paxton and others in trust to secure the payment of $53,985.79 due divers creditors of the mortgagors, amongst others the Bloomsburg Iron Company and Fox & Brother.   This mortgage was the second lien on the same real estate.   A judgment was confessed in June 1859 on this mortgage to the Bloomsburg Iron Company for $36,668.30, the balance due them.   At the same time Burnish & Co. and Edward Yardley confessed judgment to the Bloomsburg Iron Company for the same amount as additional security.   A note to Fox & Brother for $1269.91, secured by the mortgage, was also unpaid.   Charles M. Atkins claimed to be the owner of this mortgage by assignment from the iron company and Fox & Brother.   Joseph Paxton, the assignee of the first mortgage, having died, his administrators, George Hughes and John Sharpless, obtained judgment upon it, September 27th 1862, for $22,177.50.   There were other judgments entered against the

[Atkins's Appeal.]

firm in favor of Charles M. Atkins for· $18,217.60, Stichter & Thompson for $2000 and Allen Fisher, trustee, &c., for $3900. Writs of fi. fa. Nos. 81, 90 and 91, to March Term 1864, were issued in these three judgments. Under these executions proceedings under the Sheriff's Interpleader Act were commenced, which do not appear yet to have been concluded.

A levari facias, No. 95 to March Term 1864, was issued on the first mortgage, and the land sold to Charles M. Atkins on the 29th of February 1864 for $56,000.

A fieri facias, No. 117 to March Term 1864, was issued on the judgment of the Bloomsburg Iron Company; and on the 2d of March 1864 the personal property of the defendants was sold under the four writs of fieri facias, and brought $18,663.68.

The following paper was afterwards given to the sheriff :—

"GEORGE HUGHES et al.     95 March Term 1864.
        v.           Levari facias debt, $22,177.50.
JOHN BURNISH & Co.      Interest from 27th September 1862.

March 7th, directed by plaintiffs' attorney to collect    $16,092.08
and interest,    .    .    .    .    .    .    .     2,011.51

                                                 $18,103.59

"Received, March 21st 1864, of John Raush, sheriff, eighteen thousand one hundred three $\frac{59}{100}$ dollars in full, above debt and interest.

"$18,103.59.       JOHN BANNAN, attorney for plaintiff."

On the 30th of March the following paper was given to the sheriff :—

"FOX & BRO. and BLOOMSBURG   |   Mortgage dated 15th October
    IRON COMPANY            |   1857. Recorded in mortgage-
             v.             |   book N, page 406, to Paxton,
JOHN BURNISH, JAMES TALBOT   |   Repplier et al., in trust.
   and THOMAS W. YARDLEY.     |

"I acknowledge that Charles M. Atkins, assignee of all the right, title and interest of Fox & Brother and the Bloomsburg Iron Company in a certain mortgage, dated 18th October, A. D. 1857, &c., given by John Burnish, James Talbot and Thomas W. Yardley to Paxton and others in trust to Fox & Bro. and the Bloomsburg Iron Company and others (the remaining creditors having been fully paid by Burnish, Talbot and Yardley), has received the sum of thirty-seven thousand four hundred and sixty-six $\frac{87}{100}$ dollars out of the purchase-money of the real estate (rolling-mill property) of John Burnish, Thomas B. Harris, John Bickley, Joseph Downing and James Talbot, on its mortgage aforesaid.

"$37,466.87.      CHARLES M. ATKINS, assignee.
            "By his attorney, JAMES H. CAMPBELL."

[Atkins's Appeal.]

The executions were not returned by the sheriff.

On the 8th of July 1864 this agreement was filed, and in accordance with it, James Ellis, Esq., was appointed auditor.

"In the Court of Common Pleas of Schuylkill county: Charles M. Atkins *v.* John Burnish & Co., 81, March Term 1864; fi. fa. debt, $36,436.20; real debt, $18,217.60; Stichter & Thompson *v.* Same Defendants, 90, March Term 1864; fi. fa. debt, $2000; Allen Fisher, Trustee, &c., *v.* Same Defendants, 91, March Term 1864; fi. fa. debt, $3900; The Bloomsburg Iron Co. *v.* Edward Yardley, Thomas W. Yardley, John Burnish and James Talbot, 117, March Term 1864; fi. fa. debt, $73,377.64; real debt, $36,688.72.

"And now, July 8th, 1864, the parties in the above case agree that for the purpose of effecting a distribution of the money arising from the sale of the real and personal property of John Burnish & Co. the money may be considered in court, and we agree, that the court may appoint an auditor to make distribution of the money, arising from the sale, to and among the lien creditors entitled to the same. It is further agreed, &c.

J. W. RYAN,
                Attorney for E. Yardley.
CAMPBELL & SMITH,
                Attorney for C. M. Atkins.
LIN. BARTHOLOMEW,
Attorney for Stichter & Thompson, and
Allen Fisher, Trustee, &c."

Another agreement was entered into and filed substantially the same as the foregoing and of the same date;—with this in addition:

"We, the undersigned, agree to waive the ten days' notice, and agree that the report in the above case be filed in court on or after Monday, 9th day of January 1865.

J. W. RYAN,
                Att'y for Yardley & Bennett.
JOHN BANNAN,
LIN. BARTHOLOMEW,
BEN. W. CUMMINGS,
CAMPBELL & SMITH,
                Attorneys for C. M. Atkins."

On the 20th of March 1865, the auditor filed his report which was on that day confirmed nisi. Amongst other things he reported that the real estate had been sold under the execution of the Bloomsburg Iron Company.

He made the following distribution:—

[Atkins's Appeal.]

Fund arising from the real estate:

| | | |
|---|---:|---:|
| To costs | $942 | 99 |
| To the administrators of Paxton | 18,103 | 59 |
| Balance on first mortgage, including interest to February 29th 1864, to D. R. Bennett, assignee of said administrators | 5,222 | 41 |
| Remainder *pro ratâ:* | | |
| To Fox & Brother's note | 1,007 | 47 |
| To Bloomsburg Iron Co.'s judgment | 30,723 | 54 |
| | | |
| Total proceeds of real estate | $56,000 | 00 |

Fund arising from personal estate:

| | | |
|---|---:|---:|
| Sheriff's costs | 80 | 34 |
| To laborers | 7,263 | 96 |
| To J. A. Innes, excise tax | 199 | 50 |
| To Asbury Mortimer, keeping horse, | 160 | 00 |
| The balance of the fund to the Bloomsbury Iron Co.'s execution | 10,959 | 88 |
| | | |
| Personal property brought | $18,663 | 68 |

On the 10th of April 1865, the affidavit of W. R. Smith, Esq., of counsel with C. M. Atkins, was filed. It set forth that no assignment from the administrators of Paxton to D. R. Bennett was produced before the auditor, that nothing was claimed by Bennett of the residue of the Paxton mortgage at the hearing that after the report had been made the auditor informed him that the distribution was the same as that made by the sheriff, that he did not know to the contrary until the 4th (then) instant, and that the report was a surprise to him.

Upon filing this affidavit, the court same day permitted Atkins to file exceptions, *nunc pro tunc*.

The exceptions were,

1. Awarding any part of the fund to D. R. Bennett.

2. Reporting that the real estate had been sold under the execution of the Bloomsbury Iron Company, when the record showed that it had been sold under the execution of Paxton's administrators. A very large amount of testimony was taken as to the exceptions: and on the 24th of June 1867, whilst the matter was still under consideration, the attorneys of C. M. Atkins and Atkins & Brother moved to quash the whole proceedings on the ground that there was no fund in court for distribution, and the court had no jurisdiction in the proceeding.

The opinion of the court was delivered, October 25th 1867, by Ryon, P. J.

" This case comes up on exceptions to the report of the auditor. The counsel for Daniel R. Bennett, a creditor claiming a portion

[Atkins's Appeal.]

of the fund, moved for a rule upon the sheriff to pay the proceeds into court. The counsel for C. M. Atkins, the purchasing creditor and the claimant of the fund, agreed in writing that the money should be considered in court, that an auditor should be appointed, and the distribution of the proceeds of the sale made, the same as if the money was in court. The auditor was appointed in pursuance of this agreement, and the parties with their counsel appeared before the auditor and were heard. The auditor made his report and gave notice to the counsel of the respective parties that the report was ready for signing, as he was bound to do under the 25th rule of court; and all the counsel signed a waiver of the ten days' notice and of their *right to file exceptions.* The counsel for Mr. Atkins upon the argument, asked to have the whole proceedings quashed for want of jurisdiction, upon the ground that no money had been paid into court. Mr. Atkins purchased the property from which the proceeds of the sheriff's sale arose. He was the claimant of all the proceeds, except the amount due upon the first mortgage. He had paid what was claimed by Paxton's administrators, upon the first mortgage, and hence Atkins was really the claimant of the whole fund, and denied the claim of Daniel R. Bennett. The sheriff had made application of the proceeds, and had taken Atkins's receipt for the amount distributable to him upon the second mortgage and the judgment against Yardleys, Burnish *et al.* Atkins being the purchaser and the claimant of the fund, the sheriff was bound to take his receipt, and he was not bound to pay the amount claimed by him to the sheriff. It was the duty of the sheriff to take the purchaser's receipt, state the fact in his return, and attach a list of liens upon the property sold to his return. Upon this being made in open court *any* claimant upon the fund might have had an issue or an auditor to try the right to the fund and make distribution. The agreement of the parties' counsel was not even necessary to give jurisdiction to the court, for this case is clearly within the 1st and 2d sections of the Act of 20th April 1846.

" Whatever questions may have been raised about the regularity of the initiatory steps, the agreement of counsel and the subsequent actions in the case, estop the parties from denying jurisdiction. They had their day in court and took their chances of a trial. It would be inequitable and unjust to allow them now to repudiate the result."      *      *      *      *

After discussing the exceptions, they were dismissed, and the report confirmed.

C. M. Atkins appealed, and assigned for error, that the court had no jurisdiction as there was no fund in court for distribution; with other errors relating to the distribution.

*B. W. Cummings* and *F. W. Hughes* (with whom was *W. R.*

*Smith*), for appellant.—The fund should have been actually in court: Williams's Appeal, 9 Barr 270; Constine's Appeal, 1 Grant 242. Want of jurisdiction cannot be cured by consent: Carlisle *v*. Weston, 21 Pick. 535; 3 Chitty's Gen. Prac. 524; Osgood *v*. Thurston, 23 Pick. 110.

*J. W. Ryan*, for appellee.—When the purchase-money is apparently payable to a lien-creditor, it is not necessary to pay it into court: Shaw's Appeal, 10 Wright 408 ; Act of April 20th 1846, § 1, Pamph. L. 411, Purd. 446, pl. 100. The objection to the jurisdiction is too late: Constine's Appeal, 1 Grant 242.

The opinion of the court was delivered, February 10th 1868, by

AGNEW, J.—A brief statement of this case will make it clear that this was not a proceeding under the Act of 20th of April 1846, Purd. Dig. 446, and that the court had no power to order a distribution of the proceeds of the several sheriff's sales without a return of the writs of execution and the money being brought into court. The real estate of John Burnish and others was sold under a levari facias upon a mortgage assigned to Joseph Paxton. Paxton's administrators by their attorney, Mr. Bannan, received $18,103.59, in full of the debt and interest of that writ. The remainder of the bid, to wit, $37,466.87, was paid to C. M. Atkins, the purchaser at sheriff's sale, upon a second mortgage held by him under an assignment from the Bloomsburg Iron Company, and Fox & Brother. Had the sheriff made a special return of Atkins' receipt, together with the certified list of liens, showing that he was entitled to the money, and the court thereupon had, at the instance of the creditors, under their agreement, appointed an auditor to make distribution, the case would have fallen within the provision of the law, and the objection to the want of the money paid into court would not avail. But such was not the case. C. M. Atkins, Stichler and Thompson, Allen, Fisher and the Bloomsburg Iron Company had issued four several writs of fi. fa., upon which the sheriff had levied and sold the personal estate of John Burnish & Co., which produced a fund of $18,663.68. The agreement, under which the auditor, whose report is before us in this appeal, was appointed, was entered into by these four execution creditors, reciting specially their respective writs of fi. fa., by names of parties, number, term and amount of debts. The writ of levari facias, under which the real estate was sold, was neither recited nor referred to, nor were Paxton's administrators, or Bennett the alleged assignee of the balance of the mortgage, or C. M. Atkins, as owner of the second mortgage or as purchaser, named or referred to in the agreement. The agreement itself proceeds to say that " the parties in the above cases (to wit, the writs of fi. fa.) agree

that, for the purpose of effecting a distribution of the money aris-
ing from the sale of the real and personal property of John
Burnish & Company, the money may be considered in court, and
all agree that the court may appoint an auditor to make distribu-
tion of the money, arising from the sale, to and among the lien-
creditors entitled to the same." In explanation of this agree-
ment it may be said that it was supposed that the real estate had
been sold on the writ of the Bloomsburg Iron Company. This,
however, was not the fact. There then was an attempt of four
execution creditors, who had sold personal property only, to com-
bine a distribution of two independent funds from different kinds
of property, part of which had been made upon a writ of levari
facias, to which none of them were parties, without the return of
the writs by the sheriff or the payment of the money into court,
where distribution of one of the funds had been actually made by
the sheriff, and where there were outside claimants entitled, as
the auditor's report shows, to come in upon both funds, who were
not parties to the agreement. By the auditor's report it appears
that of the $37,466.88, receipted for by C. M. Atkins, on the
second mortgage nearly $7000 belong to laborers and other out-
side parties. This is clearly not a proceeding under the Act of
1846. How can the court enforce this distribution if Atkins
refuses to refund the $7000, out of the money receipted for to
the sheriff? Can the court, in such a case as this, set aside the
sheriff's deed to him? This admits of great doubt. The court
cannot set aside the sale of the personal estate. How can the
court enforce the distribution of the proceeds of the personal
estate, with the executions not returned and the money not paid
in? How do we know what return the sheriff might eventually
make? The record exhibits steps taken by him under the Inter-
pleader Act. How these may result we do not know, or whether
they will in any manner affect the $18,663.68, reported upon by
the auditor. If the laborers or others outside call for their money
it is clear the court has it not in custody to award it to them.
As to the real estate also, what is to prevent Bennett, the alleged
assignee of the residue of the Paxton mortgage, from insisting
upon the sale made upon the levari facias, and ruling the sheriff
to bring in the money upon his writ. The whole proceeding is
most manifestly irregular, and the court is without power to
enforce its decree of distribution if confirmed. It is supposed
that there is a general practice to make distribution while the
money is not paid in, and this must be supported on the ground
of general error. If there be such a bad practice the sooner it is
abandoned the better. It is directly in the face of what this
court said in Williams's Appeal, 9 Barr 270, recognised in Mas-
ser *v.* Dewart, 10 Wright 536–7. Suppose a sheriff has made a
perfectly safe sale, as he thinks, and is forced to return knocked

[Atkins's Appeal.]

down money not paid, and therefore unsold for want of buyers, what becomes of the proceeding in distribution ? The decree of the court below is clearly erroneous, and is therefore reversed, and all the proceedings to make distribution are quashed and set aside, and the parties to the agreement of July 8th 1864, are ordered to pay the costs.